IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02176-REB-BNB

AARON I. JORDAN,

Plaintiff,

v.

ADAMS COUNTY, and
S. FULLER, program coordinator,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on defendant Sterritt Fuller's **Motion for Summary Judgment** [Doc. #47, filed 09/30/2011] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  <u>World of Sleep, Inc. v. La-Z-Boy Chair Co.</u>, 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS[1]

1. The plaintiff was an inmate at the Adams County Detention Facility ("ACDF") from September 20, 2009, through November 5, 2009.

2. While incarcerated at ACDF, the plaintiff made several requests to be placed on a vegetarian diet for religious and medical reasons. The requests were denied by defendant Fuller. *Motion*, Ex. B.

3. The plaintiff's requests were denied because the plaintiff did not identify sufficient medical or religious bases for a vegetarian diet. Id. at pp. 4, 10.

4. The plaintiff does not practice any particular religion nor does he attend a particular church that suggests vegetarianism as a part of a religion. Id. at Ex. A, 7:20-9:22; 18:1-19:1.

5. The plaintiff admits that his desire for a vegetarian diet is a personal choice and not a tenet of his religion. Id. at 7:20-9:22; 27:10-19.

The plaintiff filed his Second Amended Complaint on November 5, 2010 [Doc. #7] (the "Complaint"). The Complaint asserts three claims for relief. All of the plaintiff's claims are based on the defendant's failure to provide a vegetarian diet while he was housed at ACDF. Claim One alleges a violation of the plaintiff's due process and equal protection rights. Claim Two alleges a violation of the plaintiff's Eighth Amendment right to be free from cruel and

---

[1] The defendant's Motion contains a statement of undisputed facts regarding the merits of the plaintiff's claims. The factual statements are supported by evidence. *Motion*, pp. 2-4. The plaintiff includes in his response a statement of undisputed facts, but he either does not cite supporting evidence, or he cites evidence that does not support his version of the facts. I have not considered factual statements that are not supported by competent evidence. I am aware that under C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992), a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury. However, the allegations of the Complaint are vague and conclusory.

unusual punishment. Claim Three alleges that the defendant violated the plaintiff's First Amendment right to free exercise of religion.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Exhaustion

The defendant asserts that the plaintiff failed to exhaust his administrative remedies. *Motion*, pp. 5-6. Because the plaintiff's claims challenge prison conditions, they are governed by the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit, that the inmate exhaust all available administrative remedies whether the inmate is seeking injunctive relief, monetary damages, or both. Booth v. Churner, 532 U.S. 731 (2001).

The defendant asserts that the Inmate Handbook outlines the grievance process for inmates at ACDF, and it requires that the inmate first file a grievance with the module deputy,

then with a supervisor, and finally with the Platoon Lieutenant or the Technical Services Manager. *Motion*, pp. 5-6. However, the Inmate Handbook states:

> If you have an issue that you cannot resolve routinely, you may write a grievance. The module deputy will hear the grievance first. If the module deputy cannot resolve the issue, the grievance will go to a Supervisor. The final step for a grievance is a Platoon Lieutenant or the Technical Services Manager.

Id. at Ex. C, p. 4, § 22d.

The written procedure does not state that the inmate must submit an appeal to the Supervisor and the Platoon Lieutenant or the Technical Services Manager. To the contrary, the language of the procedure seems to suggest that the grievance will be submitted to these individuals without involvement from the inmate.

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and the defendant bears the burden of establishing that the inmate failed to exhaust all of his administrative remedies. Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011). The defendant has failed to establish that the plaintiff did not exhaust his administrative remedies. Accordingly, the Motion should be denied insofar as it seeks dismissal of the Complaint for failure to exhaust.

### B. Official Capacity Claims

The defendant asserts that "[a]lthough the Court caption includes Adams County as a party, it does not appear from Plaintiff's Complaint that he intended to sue Adams County as a separate defendant." *Motion*, p. 1, n.1.

The Complaint is not a model of clarity. The caption of the Complaint names the following defendant(s):

> S. Fuller, (Programs Coordinator)
> Adams County "official capacity"

*Complaint*, p. 1.

In the section of the Complaint titled "Parties," the plaintiff names one defendant: "S. Fuller (Programs Coordinator) 150 N. 19th Avenue Brighton, CO 80601 'Policy Maker.'" Id. at p. 2.

The distinction between "individual" and "official" capacities is derived from § 1983 jurisprudence and turns on "the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." Hafer v. Melo, 502 U.S. 21, 26 (1991). Specifically:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (internal quotations and citations omitted).

In Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §

1983." Id. at 694. A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. Id. at 690. A custom is a "persistent and widespread ... practice[] of ... officials." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

To the extent the plaintiff is suing Fuller in his official capacity, the Complaint does not allege, and the plaintiff does not provide any evidence to demonstrate, that any custom or policy is responsible for the deprivation of the plaintiff's constitutional rights. Moreover, the plaintiff's argument regarding this issue is incomprehensible. *Answer to M.S.J & Review of Case Law* [Doc. #53] (the "Response"), p. 7.

### C.  Individual Capacity Claims

To the extent the plaintiff is suing Fuller in his individual capacity, his claims fail for the reasons discussed below.

#### 1.  Claim One: Due Process and Equal Protection

##### a.  Due Process

Claim One alleges that the defendant violated the plaintiff's substantive due process rights. *Complaint*, p. 4; *Response*, p. 4. The plaintiff states that because he was denied a vegetarian diet, he was forced to trade food with other inmates which jeopardized his personal security. *Complaint*, p. 3. "This lead to an attack which has left me disabled." Id. He states that "[p]ersonal security is a historic liberty interest recognized in the due process clause . . . ." Id. at p. 4. Although the plaintiff attempts to cloak his liberty interest in personal security, the basis for this claim is that the defendant did not provide the plaintiff with a vegetarian diet.

The Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by* Sandin v. Conner, 515 U.S. 472 (1995). The Constitution itself does not give rise to a liberty interest in receiving a preferred diet while incarcerated.

State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.[2]

---

[2] In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976) and Wolff v. McDonnell, 418 U.S. 539 (1974). Those principles focus on the nature of the deprivation instead of the language of a particular regulation. Sandin, 515 U.S. at 481.

The following considerations are relevant to the inquiry of what constitutes an atypical and significant hardship: (a) whether the conditions of the plaintiff's confinement relate to and further a legitimate penological interest such as safety or rehabilitation; (b) whether the conditions are extreme; (c) whether placement in the conditions increases the duration of the plaintiff's confinement; and (d) whether placement in the conditions is indeterminate. Estate of Dimarco v. Wyo. Dept. of Corr. Div. of Prisons, 473 F.3d 1334, 1342 (10th Cir. 2007).

Deprivation of a particular type of diet for a short time, including a religious diet, does not implicate a liberty interest. Mosier v. Alexander, No. CIV-05-1068-R, 2006 WL 3228703, at *3 (W.D.Okla. Nov. 7, 2006) (assuming the truth of plaintiff's allegation that he was suspended from receiving kosher diet for thirty days without a hearing or notice, and holding that allegation did not state a claim for violation of due process); Dove v. Broome County Correctional Facility, No. 9:10-CV-0002 (DNH/DEP), 2011 WL 1118452, at *12 (N.D.N.Y. Feb. 17, 2011) (stating that "[w]hile the provision of a kosher diet may implicate free exercise concerns under the First Amendment and the RLUIPA, it does not rise to the level of a cognizable liberty interest giving rise to the procedural safeguards guaranteed under the Fourteenth Amendment"); Daly v. Lappin, No. Civ. 05-276-DRH, 2006 WL 468723, at *3 (S.D.Ill. Feb. 27, 2006) (finding that removal from Kosher diet for thirty day period did not implicate a liberty interest).

Here, the plaintiff was incarcerated at ACDF for less than two months. He has not provided any evidence to show that his inability to obtain his preferred diet was atypical or that it caused him significant hardship. To the contrary, he was fed the same diet as other inmates who did not require a special diet for medical and religious reasons.

The defendant's denial of the plaintiff's requests for a vegetarian diet does not violate any liberty interest which arises directly from the due process clause, and the plaintiff has failed to provide any evidence to create a material fact dispute regarding whether any such interest has been created by the state. Accordingly, the plaintiff has failed to show a constitutionally cognizable liberty interest violated by the denial of a vegetarian diet.

### b. Equal Protection

Claim One also alleges that the defendant's denial of the plaintiff's requests for a vegetarian diet deprived the plaintiff of his equal protection rights. The plaintiff further alleges that he is a "class of one." *Complaint*, p. 4.

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbroook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Bartell v. Aurora Pub. Sch., 263 F.3d 1143, 1149 (10th Cir. 2001) (overruled on other grounds). Under this class-of-one theory, the plaintiff must show that he was singled out because of the defendant's animosity toward him; that is, the defendant's actions were "a spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state objective." Bartell, 263 F.3d at 1149 (citation omitted). The plaintiff must also demonstrate that he was treated "differently than another who is similarly situated." Id.

The plaintiff does not provide any evidence to show that he was treated differently than other similarly situated inmates or that the defendant's denial of a vegetarian diet was spiteful.

### 2. Claim Two: Eighth Amendment

Claim Two alleges that the defendant violated the plaintiff's Eighth Amendment right to be free of cruel and unusual punishment when he denied the plaintiff a vegetarian diet which forced him to trade food with other inmates and exposed him to a known risk of violence. *Complaint*, p. 5.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment prohibition of cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation. Id. at 298. To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834.

The plaintiff does not provide any evidence to show that he suffered a sufficiently serious deprivation or that the defendant knew of and disregarded a substantial risk to his health or safety.

### 3. Claim Three: First Amendment Free Exercise of Religion

Claim Three alleges that the defendant's failure to provide a vegetarian diet violated the plaintiff's First Amendment right to free exercise of religion. *Complaint*, p. 6.

In order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his sincerely held religious beliefs. Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007).

It is undisputed that the plaintiff does not practice any particular religion; he does not attend a particular church that suggests vegetarianism as a part of a religion; and that he admits that his desire for a vegetarian diet is a personal choice and not a tenet of his religion. The plaintiff has failed to provide any evidence to create a material fact dispute regarding whether the defendant's failure to provide him with a vegetarian diet substantially burdened his sincerely held religious beliefs.

## IV. CONCLUSION

I RECOMMEND that the Motion [Doc. # 47] be GRANTED and that summary judgment enter in favor of the defendants on all of the plaintiff's claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by

the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d

1057, 1060 (10th Cir. 1996).

   Dated January 17, 2012.

                BY THE COURT:

                  s/ Boyd N. Boland
                United States Magistrate Judge